Ronald L. GOLDMAN, Appellant,

v.

REVIEW BOARD OF the INDIANA EM-
PLOYMENT SECURITY DIVISION,
William H. Skinner, David L. Adams,
and Paul M. Hutson, as Members of and
as constituting the Review Board of the
Indiana Employment Security Division
and Tri-State Flasher Company, Inc.,
Appellees.

No. 2-582A126.

Court of Appeals of Indiana,
Second District.

Oct. 18, 1982.

Steve Culley, Legal Services Organization
of Indiana, Inc., Evansville, Donald R.
Lundberg, Legal Services Organization of
Indiana, Inc., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gordon R.
Medlicott, Deputy Atty. Gen., Indianapolis,
for appellees.

SHIELDS, Judge.

Ronald L. Goldman appeals the Review
Board's decision denying him unemploy-
ment benefits on the basis he voluntarily
left his employment without good cause in
connection with the work.

On appeal Goldman and the Review
Board describe the sole issue as whether a
physician's statement substantiating the
employee's condition at the time of his vol-
untary termination of employment is a nec-
essary component of "reasonable efforts to
maintain the employment relationship" un-
der I.C. 22-4-15-1(d)(2) (Burns Code Ed.).

We reverse and remand.

The decision of the appeals referee, af-
firmed by the Review Board, reads:

"SUMMARY OF CASE: The claimant
appealed the deputy's determination, dat-
ed February 15, 1982, which held that the
claimant voluntarily left his employment
without good cause in connection with
the work. The claimant's benefit rights
were suspended as of the week ending
January 2, 1982, and the claimant's maxi-
mum benefit amount was reduced by

25%. The claimant appeared at a referee hearing in Evansville, Indiana on March 10, 1982. The employer did not appear at the hearing, although it was duly notified of the time and place of the hearing. "FINDINGS OF FACT: The evidence indicates that the following findings are true. The claimant was employed by this employer during about [sic] May of 1971. The claimant was a service worker and was paid approximately $5.25 an hour. The claimant quit his employment on or about December 30, 1981. The claimant quit his employment because chemicals which the claimant used at work were aggravating his asthma condition. The claimant did inform this employer that he was having problems with such chemical [sic] but this employer never gave him any other product to use. The claimant did request a job transfer but this employer had no other work for the claimant. The claimant had taken a sick leave and reasonably believed that further sick leave would not help him cope with such disability. The claimant's doctor did advise the claimant to quit his employment but the claimant never presented this employer with any doctor's statement indicating that the claimant was unable to perform his work assignment because of his physical disability.

"CONCLUSIONS OF LAW: From the foregoing findings it is concluded that the claimant's unemployment cannot be considered as involuntarily [sic] due to any medically substantiated physical disability, within the meaning of Chapter 15, Section 1, of the Indiana Employment Security Act, because the claimant did not take reasonable steps to protect his employment by presenting this employer with any doctor's statement indicating that the claimant was unable to perform his work assignment. Therefore, from the foregoing findings it is concluded that the claimant voluntarily left his employment without good cause in connection with the work.

"DECISION: The deputy's determination is hereby affirmed. The statutory penal-

ty of Chapter 15, Section 1, of the Indiana Employment Security Act applies."
Record at 25.

The statute in issue reads:

"An individual whose unemployment is the result of medically substantiated physical disability and who is involuntarily unemployed after having made reasonable efforts to maintain the employment relationship shall not be subject to disqualification under this section for such separation."

I.C. 22–4–15–1(d)(2).

We have held this statute

"compels the claimant to make 'reasonable efforts to maintain the employment relationship,' a requirement which presupposes the employer will be aware of the existence of a medical problem and of the physical limitations arising from such disability. Only then may the parties determine, for example, whether the employee may be transferred to work which is more suitable in light of his particular health problem. We note other jurisdictions have recognized the importance of such factors. See, e.g., Konopski v. Commonwealth Unemployment Compensation Board of Review, (1978) 38 Pa.Cmwlth. 62, 391 A.2d 1137, where the Pennsylvania court held before an employee could obtain benefits after leaving for health reasons he must (1) inform the employer of the health problem, (2) request a transfer to work which was suitable in light of his health problem, and (3) offer competent testimony that at the time of termination adequate health reasons existed to justify termination."

*Raham v. Review Bd. of Ind. Employment Sec.*, (1980) Ind.App., 405 N.E.2d 606, 607.

■ Thus, *Raham* holds employer awareness of a medical problem and the accompanying limitations is a necessary component of an employee's reasonable efforts to maintain his employment in order that adjustments in the employment might be made. However, it does not address the issue of whether a physician's statement to the employer is an *essential* component to employer awareness. We hold it is not.

██ We conclude the provisions of I.C. 22–4–15–1(d)(2) require an employee to:

(1) medically substantiate the termination of his employment is the result of physical disability

and

(2) substantiate that prior to the termination of his employment he made reasonable efforts to maintain it by sufficiently advising his employer of his disability and the accompanying limitations with the purpose of seeking reasonable alternate work assignments.

*Raham.*

We can certainly perceive of situations where the nature of the physical disability is such that a physician's statement is reasonably necessary to advise the employer. However, the converse may also be true as, for example, in situations where employer awareness of the disability and the limitations, by whatever means, is not disputed. Of course, by not providing a physician's statement an employee exposes himself to the risk of his employer misunderstanding his problem and limitations or the risk of inadequately or inaccurately communicating them to the employer.

In the instant case findings were made as to the manner in which the employer was informed of Goldman's health problem and of his efforts to maintain his employment. However, the Review Board, as the fact finder, did not determine the reasonableness of the employee's methods and efforts. Rather, the Review Board limited its determination by its conclusion a medical statement indicating Goldman's inability to perform his work assignment was mandated by I.C. 22–4–15–1(d)(2). Accordingly, we reverse the decision and remand for further proceedings consistent with this opinion.

SULLIVAN, J., concurs.

BUCHANAN, C. J., dissents, with separate opinion.

BUCHANAN, Chief Judge, dissenting.

I must dissent.

The unambiguous mandate of Ind.Code 22–4–15–1(d)(2) is that *medical substantiation* of an employee's disability must be given to his employer prior to termination. *Raham v. Review Board of the Indiana Employment Security Division,* (1980) Ind. App., 405 N.E.2d 606. *See also Huber v. Review Board of the Indiana Employment Security Division,* (1981) Ind.App., 422 N.E.2d 1257. The plain meaning of the words of the controlling statute, "medically substantiated disability," requires more than the employer's awareness of a medical problem; a physician's statement is needed to substantiate the employee's claim of disability. As a reviewing court, we are under a duty to give effect to the plain and ordinary meaning of the statute's language. I.C. 1–1–4–1(1); *Wilson v. Stanton,* (1981) Ind.App., 424 N.E.2d 1042.

What else could a "medically substantiated disability" mean if not the providing of a doctor's certificate or report?

In addition to substantiating the claimed disability, a physician's statement serves yet another function: It provides the employee with *information to aid him in making* "reasonable efforts to maintain the employment relationship." As outlined by the *Raham* court, the physician may reliably define the physical limitations arising from the claimant's disability, indicating whether the claimant is able to continue his present position or suggesting what types of employment the claimant can perform. Such information is crucial to the employee's claim.

Therefore, I would affirm the Review Board's conclusion that Goldman failed to make "reasonable efforts to maintain the employment relationship."