**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 03 2012, 9:08 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**JONATHAN S. GARDINER**
Hartford City, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JANINE STECK HUFFMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JONATHAN S. GARDINER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1110-EX-1052 |
| | ) | |
| REVIEW BOARD OF THE INDIANA | ) | |
| DEPARTMENT OF WORKFORCE | ) | |
| DEVELOPMENT, and AUDIO VIDEO | ) | |
| INTERNATIONAL LIMITED, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE REVIEW BOARD OF THE INDIANA
DEPARTMENT OF WORKFORCE DEVELOPMENT
The Honorable Steven F. Bier, Chairperson
Cause No. 11-R-03851

**July 3, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

A claims deputy of the Indiana Department of Workforce Development ("the Department") denied a claim for unemployment compensation benefits filed by Jonathan S. Gardiner ("Gardiner"). Gardiner administratively appealed this denial, and an Administrative Law Judge ("ALJ") affirmed the denial of benefits. Gardiner then filed an appeal to the Review Board of the Department ("the Review Board"), which affirmed the ALJ's decision. Gardiner, acting *pro se*, now appeals to this court and presents six issues, which we consolidate and restate as whether the Review Board erred in concluding that Gardiner was not entitled to unemployment compensation benefits.

We affirm.

**Facts and Procedural History**

In September 2007, Gardiner began to work for Audio Video International Limited ("AVI") in sales and installation. On April 18, 2011, Gardiner came to work with a black eye, explaining that he had been in a fight. Two days later, an AVI employee received a telephone call from Gardiner's wife informing him that Gardiner was not coming to work that day because he had been in another fight and was hospitalized as a result of the injuries he sustained during the fight. Gardiner's injuries included a broken jaw, broken eye socket, broken cheekbone, and a broken nose. Also, Gardiner claimed that, as a result of his injuries, his jaw was wired shut. Gardiner's supervisor visited him in the hospital on April 18 and spoke with Gardiner. After this, Gardiner had no direct contact with his supervisor.

On May 4, 2011, Gardiner accompanied his wife to AVI's place of business to drop off a physician's note, but the couple left without speaking to Gardiner's supervisor.

2

The physician's note they left stated, "please excuse Jonathan Gardiner from work from 5-4-11 to 5-23-11 due to disability." Ex. p. 15. Thereafter, Gardiner's supervisor attempted to call Gardiner to see if there was other work Gardiner could perform, because he had other work to be done and not enough employees to complete it. Gardiner did not return these calls, but he later claimed that his wife had told his employer that Gardiner's cellphone number had been disconnected and to call her cellphone number if anyone needed to contact her husband. On either May 9 or May 10, 2011, Gardiner's wife came by Gardiner's place of work and "dropped off some paperwork," but again, there is no indication that she spoke with Gardiner's supervisor at that time, either. Tr. p. 14.

On May 12, 2011, AVI terminated Gardiner's employment. The termination letter explained in relevant part:

> You are being terminated due to your misconduct detrimental of [sic] the reputation of our company. Which most recently includes being in a physical altercation with a minor, many days missed at work, unable to reach you? [sic] Telephone attempts to contact you, leaving a call back number but no response from you. The company was left with no choice but terminate your employment.

Ex. Vol. p. 25.

Gardiner then sought unemployment compensation benefits. On June 22, 2011, a claims deputy with the Department denied Gardiner's claim for benefits, concluding that Gardiner was not involuntarily unemployed due to a medically substantiated physical disability after having made reasonable efforts to maintain the employment relationship. See Ind. Code § 22-4-15-1(c)(2). Gardiner filed an administrative appeal of this denial, and an ALJ heard his appeal on July 27, 2011. Two days later, the ALJ affirmed the

claims deputy's decision.  On August 4, 2011, Gardiner appealed the ALJ's decision to the full Review Board.  Aside from correcting one minor factual issue,[1] the Review Board affirmed the ALJ's decision.  Gardiner now appeals.

**Standard of Review**

The Review Board reviews the ALJ's decision for errors of fact, law, or procedure based on the record before the ALJ.  P.K.E. v. Review Bd. of Ind. Dep't of Workforce Dev., 942 N.E.2d 125, 129 (Ind. Ct. App. 2011) (citing Ind. Code § 22-4-17-5(e)), trans. denied.  The Review Board "may on the [B]oard's own motion affirm, modify, set aside, remand, or reverse the findings, conclusions, or orders of an administrative law judge[.]" I.C. § 22-4-17-5(e).  As the ultimate finder of fact, the Review Board has wide discretion and freedom to decide any and all issues, and may act independently on the evidence before it.  P.K.E., 942 N.E.2d at 129.

Upon appellate review in our court, any decision of the Review Board shall be conclusive and binding as to all questions of fact.  P.K.E., 942 N.E.2d at 129 (citing Ind. Code § 22-4-17-12(a)).  Our review of the Review Board's findings of basic fact are subject to a "substantial evidence" standard of review.  Id.  In this analysis, we neither reweigh the evidence nor assess the credibility of witnesses, we consider only the evidence most favorable to the Review Board's findings, and we will reverse only if there is no substantial evidence to support the Board's findings.  Id.  The Review Board's determinations of ultimate facts involve an inference or deduction based upon the

---

[1] The ALJ made a finding that Gardiner began his employment with AVI on April 15, 2011, but the Review Board found that Gardiner began his employment in September 2007.

4

findings of basic fact, and we review the determination of ultimate facts to ensure that the Board's inference is reasonable. Id.

If the Review Board's decision is challenged as contrary to law, our court is limited to a two-part inquiry into the "sufficiency of the facts found to sustain the decision" and the "sufficiency of the evidence to sustain the findings of facts." Ind. Code § 22-4-17-12(f); P.K.E., 942 N.E.2d at 129. This standard requires us to review: (1) determinations of specific or basic underlying facts; (2) conclusions or inferences from those facts, or determinations of ultimate facts; and (3) conclusions of law. P.K.E., 942 N.E.2d at 129-30. We review *de novo* the Review Board's conclusions of law in order to determine whether the Board correctly interpreted and applied the law. Id.

### The Indiana Unemployment Compensation Act

Indiana Code article 22–4, known as the Indiana Unemployment Compensation Act ("the Act"), was enacted to "provide for payment of benefits to persons unemployed through no fault of their own." P.K.E., 942 N.E.2d at 130 (quoting Ind. Code § 22-4-1-1). Under the Act, an individual who meets the requirements of Indiana Code chapter 22-4-14 and is not disqualified by the exceptions in chapter 22-4-15 is eligible for benefits. Id.

As explained in Ind. Code § 22-4-15-1(c)(2), "[a]n individual whose unemployment is the result of medically substantiated physical disability and who is involuntarily unemployed *after having made reasonable efforts to maintain the employment relationship* shall not be subject to disqualification under this section for such separation." (emphasis added). The requirement of this statute presupposes that the

employer will be aware of the existence of a medical problem and of the physical limitations arising from such disability. Goldman v. Review Bd. of Ind. Emp't Sec. Div., 440 N.E.2d 734, 735 (Ind. Ct. App. 1982). Only then may the parties determine, for example, whether the employee may be transferred to work that is more suitable in light of his particular health problem. Id. Thus, employer awareness of a medical problem and the accompanying limitations is a necessary component of an employee's reasonable efforts to maintain his employment in order that adjustments in the employment might be made. Id.

Therefore, in order to find protection under this provision, a claimant must: (1) medically substantiate that the termination of his employment is the result of physical disability, and (2) substantiate that, prior to the termination of his employment, he made reasonable efforts to maintain it by sufficiently advising his employer of his disability and the accompanying limitations with the purpose of seeking reasonable alternate work assignments. Y.G. v. Review Bd. of Ind. Dep't of Workforce Dev., 936 N.E.2d 312, 315 (Ind. Ct. App. 2010). In the present case, the parties dispute only the latter element. While not absolutely necessary, a physician's statement protects the employee from "the risk of his employer misunderstanding his problem and limitations or the risk of inadequately or inaccurately communicating them to the employer." Id. (quoting Goldman, 440 N.E.2d at 736).

**Discussion and Decision**

Gardiner's first argument is that the Review Board incorrectly found that he had no contact with his employer after April 20, 2011. The ALJ's findings, which the Board

6

affirmed, state that Gardiner's wife called his employer on April 20, 2011, and that the employer went to see Gardiner in the hospital. The findings then state that "The claimant never contacted the employer personally after that time." Ex. Vol. p. 35. Gardiner notes that he testified that he and his wife stopped by his employer's place of business on May 4, 2011, where they dropped off his physician's note. However, there is no dispute that they left without speaking to Gardiner's supervisor. Thus, the Review Board's finding in this regard is not factually incorrect.

Gardiner's next argument involves the alleged "vagueness" of the work-release note he received from his physician. The Review Board found that "the doctor's note supplied by the claimant merely states that he would be out and does not provide any medical limitations." Ex. Vol. p. 35. The note from Gardiner's physician was a form that read, "Please excuse _____ from school/work from _____ to _____ due to surgery." Id. at 15. The form was filled in with Gardiner's name in the first blank. Id. The word "work" was circled, and the dates "5-4-11" and "5-23-11" were written in the other blanks. Id. Lastly, the word "surgery" had been marked out and the word "disability" written in instead. Id. Once again, the Review Board's findings regarding the physician's note are not factually inaccurate.

Gardiner also argues that his employer "never called into question the clarity of the work release slip, nor did the employer make any assertion that they were unaware of the claimant's disabilities." Appellant's Br. p. 10. It is apparent that Gardiner's employer knew of his injuries, but there was obviously a question on the part of the employer regarding the severity of his injuries. The Review Board found that Gardiner's

employer repeatedly attempted to call him to see if there was any other work he could perform. And this finding was supported by the testimony of Gardiner's supervisor. The Review Board's findings regarding the physician's note simply state the fact that the note contained no information regarding what work, if any, Gardiner would have been able to perform despite his injuries.

Gardiner next argues that the Review Board's finding that he was terminated for failure to remain in contact with his employer was erroneous. Gardiner claims that this was not one of the reasons listed in the termination letter he received from his employer. Instead, he claims that he was terminated because his employer claimed that he had been in an altercation with a minor—a claim Gardiner does not directly deny[2] but which he claims was only supported by hearsay.

To the extent that Gardiner is claiming an evidentiary error, he failed to preserve such by lodging any objection to this hearsay evidence. Hearings before an ALJ are informal proceedings designed to determine the substantial rights of the parties. Highland Town Sch. Corp. v. Review Bd. of Ind. Dep't of Workforce Dev., 892 N.E.2d 652, 656 (Ind. Ct. App. 2008). Still, in order to preserve a challenge to the admission of evidence on appeal, a party must object to the evidence and indicate the substantive basis for the objection. See id. (holding that appellee failed to preserve hearsay issue for review because he had failed to object to evidence on that basis). There is no indication

---

[2] In fact, Gardiner claims on appeal that the charges brought against his assailant were "sealed," suggesting that his assailant was a minor.

that Gardiner made any objection to the evidence he now attacks as hearsay. The issue is therefore waived. See id.

Moreover, Gardiner's appellate argument is wholly unsupported by any citation to the relevant rules and/or case law supporting his position. It is therefore waived for the failure to make a cogent argument. See Doughty v. Review Bd. of Ind. Dep't of Workforce Dev., 784 N.E.2d 524, 527 (Ind. Ct. App. 2003) (concluding that appellant waived argument by failing to cite authority or make cogent argument) (citing Ind. Appellate Rule 46(A)(8)(a)).[3]

We further observe that the letter terminating Gardiner's employment *did* mention his lack of contact with his employer. The letter noted that the employer had been unable to reach Gardiner despite repeated telephone calls and messages to call the employer back. See Ex. p. 25. This was obviously a key factor in the decision to terminate Gardiner's employment. Therefore, we cannot say that the Review Board's finding was factually inaccurate in this regard.

Gardiner's claim that his telephone had been disconnected and that he had instructed his employer to contact him using his wife's telephone number are not unbelievable. But the ALJ's findings, adopted by the Review Board, make no mention of this fact. We can only assume that the ALJ did not credit Gardiner's claims regarding his telephone number, and the Review Board adopted the ALJ's findings. We are bound by

---

[3] We recognize that Gardiner is appealing *pro se*, and we prefer to address issues on their merits. See Ramsey v. Review Bd. of Ind. Dep't of Workforce Dev., 789 N.E.2d 486, 487 (Ind. Ct. App. 2003). But a party who proceeds pro se is held to the same established rules of procedure that a trained legal counsel is bound to follow. Id.

our standard of review to defer to the Review Board's findings, and we may not reassess the credibility of witnesses. See P.K.E., 942 N.E.2d at 129.

Gardiner's main argument attacks the Review Board's conclusion that the contact Gardiner made with his employer through his wife did not constitute reasonable efforts to maintain the employment relationship. The Review Board, adopting the ALJ's conclusions, explained:

> [T]he ALJ concludes that the claimant did not make reasonable efforts to maintain the employment relationship. The claimant never directly communicated with his supervisor himself. The only communication the employer had was with the claimant's wife. She dropped off a vague doctor's note that did not set out any medical limitations. The ALJ concludes that three vague communications through a third party does not constitute reasonable efforts to maintain the employment relationship.

Ex. Vol. p. 36.

Gardiner claims that he was hospitalized immediately following the assault that caused his injuries and notes that his jaw was broken and later wired shut, making it difficult to speak. This, he claims, made it necessary for him to communicate with his employer through his wife. He also repeats his claim that his wife informed his employer that Gardiner's telephone was disconnected and that his employer should use her telephone number to contact Gardiner. In essence, Gardiner claims that, under the circumstances, his contacts with his employer should have been considered reasonable efforts to maintain the employment relationship. Were we sitting as the trier of fact, we might agree with Gardiner.

But our review on appeal is limited to the facts favoring the Review Board's conclusion, and we may not reweigh evidence or re-assess the credibility of witnesses.

10

See P.K.E., 942 N.E.2d at 129. As noted above, the ALJ and the Review Board apparently did not credit Gardiner's claim regarding his telephone. And even if they did, Gardiner's wife had only limited contact with his employer. First, she informed the employer of Gardiner's injuries, hospitalization, and immediate inability to work. She and Gardiner then dropped off the physician's note at Gardiner's place of employment. But this was not done until May 4—two weeks after her initial telephone call. Gardiner makes no claim that either he or his wife made any attempt to contact Gardiner's employer during this two-week period. On May 9 or 10, Gardiner's wife stopped by his employer's place of business to drop off "paperwork." All of these contacts were brief, and it appears that neither Gardiner nor his wife ever attempted to contact Gardiner's supervisor during these visits. Further, there is no evidence that Gardiner or his wife ever telephoned his employer after the initial call informing the employer that Gardiner was hospitalized.

To the extent that the Review Board's decision suggests that a severely injured employee must personally contact his employer in order to make reasonable efforts to maintain the employment relationship, we disagree. If an employee's injuries are severe enough to make direct contact impossible or impracticable, then contact by a third party, such as a spouse, would certainly constitute a reasonable effort to maintain the employment relationship. Here, however, Gardiner, although seriously injured, was not wholly incapacitated. He admitted that, even though his jaw was broken and wired shut, it was not impossible for him to speak. Gardiner accompanied his wife to his place of employment on May 4, so it is clear that he was not completely incapacitated by his

11

injuries, but did not speak with his employer during that visit. Nor did Gardiner or his wife ever telephone Gardiner's employer after the initial call informing AVI that Gardiner had been hospitalized.

Under our standard of review, which is highly deferential to the Review Board, we are compelled to affirm the decision of the Review Board. We emphasize that a reasonable trier of fact could have come to a different conclusion. But considering only the facts and reasonable inferences favoring the Review Board's decision, we are unable to say that its decision was contrary to law.

Affirmed.

ROBB, C.J., and BAILEY, J., concur.