P.K.E., Appellant,

v.

**REVIEW BOARD OF INDIANA DE-PARTMENT OF WORKFORCE DE-VELOPMENT, and D.Z., Appellees.**

No. 93A02–1007–EX–799.

Court of Appeals of Indiana.

Feb. 11, 2011.

Patrick B. McEuen, Millbranth & Bush, Valparaiso, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Stephanie Rothenberg, Deputy Attorney General, Indianapolis, IN, Heather D. Cummings, Ind. Dept. of Workforce Development, Indianapolis, IN, Attorneys for Appellee Review Board.

Matthew J. Hagenow, Sean J. Quinn, Newby, Lewis, Kaminski, & Jones, LLP, LaPorte, IN, Attorneys for Appellee, D.Z.

## OPINION

MATHIAS, Judge.

D.Z. sold his business to, and entered into an employment contract ("the Employment Contract") with, P.K.E. P.K.E. later terminated D.Z.'s employment, and D.Z. applied for unemployment benefits. After the initial intake deputy denied D.Z.'s application, D.Z. sought review before an administrative law judge ("ALJ"). The ALJ concluded that P.K.E. discharged D.Z. for an alleged violation of his Employment Contract but also concluded that P.K.E. did not present evidence that D.Z. had, in fact, violated the terms of the Employment Contract. Thus, the ALJ concluded that D.Z. was not discharged for just cause and was therefore entitled to unemployment benefits. The Review Board of the Indiana Department of Workforce Development ("the Review Board") affirmed the ALJ's decision, and P.K.E. appeals. On appeal, P.K.E. argues: (1) that the Review Board erred in concluding that the terms of D.Z.'s Employment Contract "preempt" the statutory definitions of just cause for discharging an employee, and (2) that there was substantial evidence that D.Z. was discharged for just cause as defined by the relevant statute.

We affirm.

### Facts and Procedural History

The main facts underlying this. case seem to be relatively undisputed. D.Z.

sold his commercial printing business to P.K.E. in 2007. Under the Employment Contract that was a part of this sale, D.Z. agreed to work for P.K.E. for five years as a sales representative and account manager starting June 27, 2007. The Employment Contract included provisions regarding employment duties, salary, expense reimbursements, confidentiality, and non-competition. The Employment Contract also contained an "integration clause" stating that the contract constituted the entire agreement between the parties. In the contract, P.K.E. agreed to pay D.Z. a base salary of $75,000 and commissions based on annual sales to the customers of his printing business. P.K.E. also agreed in the contract to pay D.Z. $1,000 per month to cover transportation and cell phone expenses.

At issue here is Paragraph 5.2 of the Employment Contract, which provides:

**Immediate Termination for Cause.** The employment of the Employee by the Company may be terminated in the sole discretion of the Managing Member of the Company upon the occurrence of any one of the following events. Termination of employment for any of the following reasons shall be deemed to be termination for "cause" by the Company.

a. In the event the Employee willfully and continuously fails or refuses to comply with the written policies, standards and regulations of the Company from time to time as established. The Company shall give the Employee written notification of his failure to comply with the written policies, standards and regulations of the Company and the Employee shall be given a period of sixty (60) days to correct his behavior (Corrective Behavior Time Period) and conduct so as to comply with the written policies, standards and regulations of the Company. *The Company agrees not to terminate the Employee under this provision unless the Employee has engaged in more than two (2) instances in a consecutive twelve (12) month time period where the Employee has willfully and continuously failed or refused to comply with the written policies, standards and regulations of the Company and the Employee has failed to correct his behavior during the subsequent sixty (60) day corrective time period during each of these two consecutive periods.*

b. In the event the Employee shall be convicted by a state or federal court of law or fraud or dishonesty in the performance of the Employee's duties on behalf of the company.

c. In the event the Employee shall deliberately fail to perform any provision of this Agreement that it is the duty of the Employee to perform *after being given a written warning and a sixty (60) day period to correct his behavior.*

Appellant's App. p. 62 (emphasis added).

Thirteen months later, in a letter dated July 30, 2008, P.K.E. informed D.Z. that his sales were not meeting their projected goals and that P.K.E. believed that D.Z. was not devoting his full time and effort into generating sales. The letter stated that P.K.E. believed that D.Z. was not meeting his obligations under the Employment Contract and informed D.Z. that P.K.E. could terminate the contract. The letter proposed that D.Z.'s salary be reduced to $46,500 until the sales increased to meet the original goals. P.K.E. also proposed that D.Z.'s monthly expense reimbursement be reduced to $650 and asked him to turn in a weekly telephone

log indicating the prospective clients he had called and a travel log of the prospective clients he had visited. The letter informed D.Z. to sign and return a copy of the letter *if these terms were acceptable.*

D.Z. consulted an attorney and did not sign and return a copy of the letter to P.K.E. Instead, in December 2008, D.Z.'s attorney sent P.K.E. a letter stating that D.Z. did not agree with the proposed changes to the terms of his Employment Contract. Thereupon, D.Z. was questioned by P.K.E. representatives about his attorney's letter, and D.Z. informed them that his attorney had advised him that he was under no obligation to accept the proposed changes to the terms of his employment.

In October 2009, twenty-eight months after the parties' Employment Contract, P.K.E. received information which made it suspect that D.Z. was pursuing business for someone other than P.K.E. P.K.E. then hired an investigator to perform surveillance of D.Z. According to P.K.E., their surveillance showed that D.Z. rarely left his home other than to take his son to school or to walk his dog. Thereafter, on November 25, 2009, P.K.E. terminated D.Z.'s employment by a letter, which read in relevant part:

> Please recall that your employment agreement requires you to spend all necessary time to service the clients assigned to you and to generate new business.
>
> Regarding our earlier letter of January 28, 2009,[1] you have not complied with any of the requirements we pointed out to you. More than several clients have expressed being dissatisfied with your availability and response time. In addition, our in-house employees have found you difficult to reach. You have

repeatedly failed to respond to e-mails and phone messages regarding client requests and ignored our efforts to get information needed to keep clients project [sic] on target to meet their deadlines.

> *As a result of your breach of the employment contract, in accordance with paragraph 5.2, this is your letter of termination for cause.*

Appellant's App. p. 58 (emphasis added).

D.Z. subsequently applied for unemployment benefits with the Indiana Department of Workforce Development. P.K.E. claimed that D.Z. was fired for just cause and should therefore be ineligible for unemployment benefits. On December 28, 2009, the intake deputy denied D.Z.'s claim for benefits. D.Z. appealed this decision to an ALJ. On May 12, 2010, the ALJ conducted a hearing. On May 16, 2010, the ALJ concluded that P.K.E. failed to present substantive evidence that D.Z. was in breach of his Employment Contract and that P.K.E. had therefore failed to show that D.Z. was terminated for just cause. Specifically, the ALJ found that:

> the claimant was informed that as a result of a breach of the employment contract, in accordance with paragraph 5.2, he was being discharged from his employment with this employer. It is concluded that the employer did not present substantial evidence of probative value to show that the claimant was in violation of paragraph 5.2a since the claimant never received an employee handbook from his employer. The employer failed to present any evidence of probative value to show that the claimant was in violation [of] the written policies, standards, and regulations of the employer. It is concluded that the em-

---

1. Apparently, P.K.E. sent D.Z. another letter on January 28, 2009, but this letter was not submitted to the ALJ or Review Board and is not in the record before us.

ployer did not present any evidence to show that the claimant was in violation of paragraph 5.2b. It is concluded that the employer did not present any evidence to show that the claimant was convicted by a state or federal court of law [for] fraud or dishonesty in the performance of his duties on behalf of the employer.

According to paragraph 5.2c of the employment agreement, the claimant was to be given a written warning and a 60 day period to correct his behavior. It is concluded that the employer did not present as documentary evidence a written warning which indicated a 60 day period to correct his behavior.

According to I.C. 22–4–15–1(d)(9) a discharge for just cause is defined to include but not be limited to any breach of duty in connection with work which is reasonably owed [to] an employer by an employee. It is concluded that the employer failed to present substantial evidence of probative value to show that the claimant was in breach of the employment agreement. Therefore, it is concluded that the claimant did not breach a duty in connection with work which was reasonably owed [to] the employer by an employee. It is concluded that the claimant was discharged but not for just cause within the meaning and intent of I.C. 22–4–15–1.

*DECISION:* The deputy's determination of December 28, 2009, is, therefore, reversed. The claimant, if otherwise eligible, is entitled to receive benefits.

Appellant's App. pp. 82–83. The ALJ's decision was affirmed by the Review Board on June 29, 2010. P.K.E. now appeals.

## I. Standard of Review

■ The Review Board reviews the ALJ's decision for errors of fact, law, or procedure based on the record before the ALJ. Ind.Code § 22–4–17–5(e); *see also Trigg v. Review Bd.,* 445 N.E.2d 1010, 1013 (Ind.Ct.App.1983). The Review Board "may on the [B]oard's own motion affirm, modify, set aside, remand, or reverse the findings, conclusions, or orders of an administrative law judge[.]" I.C. § 22–4–17–5(e). As the ultimate finder of fact, the Review Board has wide discretion and freedom to decide any and all issues, and may act independently on the evidence before it. *Perlman/Rocque v. Review Bd.,* 649 N.E.2d 701, 706 (Ind.Ct.App.1995). Here, the Review Board affirmed the ALJ's findings and conclusions in whole.

■ Upon appellate review in our court, " '[a]ny decision of the Review Board shall be conclusive and binding as to all questions of fact.' " *McHugh v. Review Bd.,* 842 N.E.2d 436, 440 (Ind.Ct.App.2006) (quoting Ind.Code § 22–4–17–12(a) (2005)). Our review of the Board's findings of basic fact are subject to a "substantial evidence" standard of review. *Id.* In this analysis, we neither reweigh the evidence nor assess the credibility of witnesses, and we consider only the evidence most favorable to the Review Board's findings, and we will reverse only if there is no substantial evidence to support the Board's findings. *Id.* The Review Board's determinations of ultimate facts involve an inference or deduction based upon the findings of basic fact that is typically reviewed to ensure that the Board's inference is reasonable. *Id.*

■ If the Review Board's decision is challenged as contrary to law, our court is limited to a two-part inquiry into the "sufficiency of the facts found to sustain the decision" and the "sufficiency of the evidence to sustain the findings of facts." *Id.* (quoting Ind.Code § 22–4–17–12(f)). This standard calls upon us to review: (1) determinations of specific or basic underlying facts; (2) conclusions or inferences from

those facts, or determinations of ultimate facts; and (3) conclusions of law. *Id.* Finally, we review de novo the Review Board's conclusions of law to determine whether the Board correctly interpreted and applied the law. *Id.; M.M. v. Review Bd.*, 921 N.E.2d 16, 17 (Ind.Ct.App.2009).

## II. The Indiana Unemployment Compensation Act

■ Indiana Code article 22–4, known as the Indiana Unemployment Compensation Act ("the Act"), was enacted to "provide for payment of benefits to persons unemployed through no fault of their own." *M.M.*, 921 N.E.2d at 17 (quoting Ind.Code § 22–4–1–1). Under the Act, an individual who meets the requirements of Indiana Code chapter 22–4–14 and is not disqualified by the exceptions in chapter 22–4–15 is eligible for benefits. *Id.* An individual is disqualified for unemployment benefits if he is discharged for "just cause." I.C. § 22–4–15–1. As set forth in Indiana Code section 22–4–15–1(d):

"Discharge for just cause" as used in this section is defined to include but not be limited to:

(1) separation initiated by an employer for falsification of an employment application to obtain employment through subterfuge;

(2) knowing violation of a reasonable and uniformly enforced rule of an employer, including a rule regarding attendance;

(3) if an employer does not have a rule regarding attendance, an individual's unsatisfactory attendance, if the individual cannot show good cause for absences or tardiness;

(4) damaging the employer's property through willful negligence;

(5) refusing to obey instructions;

(6) reporting to work under the influence of alcohol or drugs or consuming alcohol or drugs on employer's premises during working hours;

(7) conduct endangering safety of self or coworkers;

(8) incarceration in jail following conviction of a misdemeanor or felony by a court of competent jurisdiction; or

(9) any breach of duty in connection with work which is reasonably owed an employer by an employee.

When an employee is alleged to have been discharged for just cause, the employer bears the burden of proof to make a prima facie showing of just cause. *Nersessian v. Review Bd.*, 798 N.E.2d 480, 482 (Ind.Ct. App.2003). Once the employer meets its burden, the burden then shifts to the employee to rebut the employer's evidence. *Id.*

## III. Discharge for Just Cause

P.K.E. argues that the ALJ and Review Board erred in concluding that D.Z.'s Employment Contract "preempted" the statutory definition of discharge for "just cause" which would disqualify D.Z. from receiving unemployment benefits. P.K.E. concedes that the ALJ's findings of fact correctly recite the facts of D.Z.'s employment history but claims that the Review Board improperly limited its inquiry into whether D.Z. violated the terms of his Employment Contract, instead of simply determining whether D.Z. was discharged for just cause as defined by statute. P.K.E. argues that while D.Z. might have a separate, civil action for breach of contract, whether he was terminated for an alleged breach of contract is an inquiry independent of whether P.K.E. discharged D.Z. for "just cause" under the Act.

■ D.Z. and the Review Board respond that the Board did not conclude that the Employment Contract "preempted" the statutory definitions of just cause, but

that the Board simply looked to the Employment Contract in determining whether the statutory definitions of just cause had been met. The Review Board further notes that, in determining whether there was just cause for discharge, it was, and we are, limited to reviewing the employer's stated reason for discharging the employee. The Review Board is correct.

In *Coleman v. Review Board*, 905 N.E.2d 1015, 1019 (Ind.Ct.App.2009), the employer claimed that it had fired the employee for "knowingly violating a reasonable and uniformly enforced work rule." We stated that "[w]e therefore must limit our analysis to that issue and cannot consider other grounds for Coleman's discharge." *Id.* (citing *Butler v. Review Bd.*, 633 N.E.2d 310 (Ind.Ct.App. 1994)). In *Butler*, we noted that the Board could not uphold the employee's discharge on grounds other than those relied upon by the employer. 633 N.E.2d at 312 (citing *Voss v. Review Board*, 533 N.E.2d 1020 (Ind.Ct.App.1989)). And in *Voss*, we held that where the employer's stated reason for discharging the employee was for excessive, unauthorized use of the company telephone, both the Review Board and court on appeal were limited to reviewing whether the employer's stated reason for discharge had a basis in fact and constituted just cause, regardless of whether other grounds may have existed for the discharge. 533 N.E.2d at 1021.

▮ Here, P.K.E. sent D.Z. a termination letter that stated:

Please recall that your *employment agreement* requires you to spend all necessary time to service the clients assigned to you and to generate new business.

Regarding our earlier letter of January 28, 2009, you have not complied with any of the requirements we pointed out to you. More than several clients have expressed being dissatisfied with your availability and response time. In addition, our in-house employees have found you difficult to reach. You have repeatedly failed to respond to e-mails and phone messages regarding client requests and ignored our efforts to get information needed to keep clients project [sic] on target to meet their deadlines.

*As a result of your breach of the employment contract, in accordance with paragraph 5.2, this is your letter of termination for cause.*

Appellant's App. p. 58 (emphasis added). Based on this letter, the Review Board concluded that P.K.E.'s stated reason for discharging D.Z. was for an alleged breach of the Employment Contract.

P.K.E. argues that it listed other reasons for discharge in the letter, including customer complaints about D.Z.'s response time, D.Z. being difficult to reach, and D.Z. not responding to emails. However, this overlooks the fact that the first sentence of the termination letter stated that the Employment Contract required D.Z. to spend time to service clients and generate new business. It also overlooks the last sentence in the letter, which clearly states that D.Z. was being discharged "[a]s a result of [his] breach of the employment contract." *Id.* And finally, P.K.E.'s argument ignores the fact that D.Z. never agreed to the terms of the January 28, 2009 letter described in the balance (second paragraph) of the termination letter. We therefore find no error in the Review Board's conclusion that P.K.E.'s stated reason for discharging D.Z. was for an alleged breach of his Employment Contract.

▮ Nor can we fault the Review Board's conclusion that P.K.E. failed to prove that D.Z. was properly discharged,

even for the stated reason, that he breached the Employment Contract. In fact, P.K.E. does not directly claim that this conclusion of the Review Board was erroneous. Instead, P.K.E. argues that, regardless of whether D.Z. breached the Employment Contract, he still breached the duties he reasonably owed to P.K.E. in connection with his work. P.K.E. notes that "[d]ischarge for just cause" is defined by Indiana Code section 22–4–15–1(d)(9) to include but not be limited to "any breach of duty in connection with work which is reasonably owed an employer by an employee." P.K.E. then refers to evidence it claims supports a conclusion that D.Z. breached a duty in connection with his work that he reasonably owed P.K.E.

However, the duties reasonably owed to the employer by the employee may vary considerably depending on the circumstances. Here, the parties negotiated and defined those duties in the Employment Contract. P.K.E. argues, however, that the Employment Contract did not define *all* of the duties that D.Z. owed to P.K.E. as an employee. In support of this claim, P.K.E. cites *Jones v. Review Board*, 399 N.E.2d 844, 845 (Ind.Ct.App.1980), and *Poort v. Review Board*, 418 N.E.2d 1193 (Ind.Ct.App.1981). These cases do not support P.K.E.'s position.

In *Jones*, an employee agreed to work for the employer during a specific shift. When the employer later told the employee that she would have to work later, she initially declined. But when told that she would be replaced if she did not accept the new, later hours, she agreed. The employee, however, changed her mind the next day, and was eventually replaced. She then applied for and was denied unemployment benefits.

On appeal of the Review Board's denial of Jones's application for benefits, this court noted that an employer generally has the prerogative of setting working schedules and conditions *in the absence of a specific agreement,* but that an employee too has the right to place conditions or limitations on her employment. *Jones,* 399 N.E.2d at 845. "[I]f such conditions are made known to the employer and are agreed to by it, these conditions become contractual working conditions." *Id.* If the employer, after having agreed to the working conditions later changes the conditions unilaterally, and the employee chooses to terminate her employment rather than accept the new changes, "the employee will be entitled to unemployment benefits since the reason for termination was a change in work agreed to be performed by the employee. Such reason constitutes good cause." *Id.* Similarly, "if the employee is discharged for refusal to accept a unilateral change in the agreed upon working conditions, the employee would be entitled to benefits as the discharge would not be for just cause as it is defined in IC 22–4–15–1." *Id.*

In *Jones*, the employee chose to remain in her employment under the changed conditions and was therefore deemed to have abandoned the original conditions. *Id.* Because the employee agreed to the employer's unilateral change in working conditions when she agreed to accept the new hours, she was not entitled to good cause status for terminating her employment as a result of the change she had agreed to. *Id.*

In the *Poort* case, Poort was employed as a punch press operator. Because business was slow at the company for whom she worked, all employees performed additional work different from their normal assignments, although employees were allowed to "punch out" and leave work if they preferred not to accept the work assigned. Poort was asked by her supervisor to wash down a press machine. Poort

refused, claiming that this task was outside her job classification, although there was no evidence before the Review Board as to the exact duties of a punch press operator at Poort's company.

Poort then sought work from another supervisor and was assigned to other jobs in the plant. However, she quarreled with the supervisor about one of her new assignments from him and "only upon the insistence of the supervisor to perform the job or 'punch out' did Poort comply." *Id.* at 1196–97. After hearing about Poort's behavior, the plant superintendent and other supervisors tried to counsel Poort concerning her belief that she was being treated unfairly. When she persisted, she was discharged.

On appeal from the denial of her application for unemployment benefits, Poort claimed that she had the contractual right to refuse new work assignments outside of her job classification as a press operator. The court, following *Jones,* held that Poort had relinquished any contractual right to refuse work assignments outside of her job classification when she, like many of her fellow employees, accepted her new job assignment instead of "punching out." *Id.* at 1196.

Neither *Jones* nor *Poort* supports P.K.E.'s claim that, despite the terms of his Employment Contract, D.Z. was subject to just cause discharge for failure to comply with P.K.E.'s instructions. In both *Jones* and *Poort,* the employees accepted new changes to their working conditions proposed by their employers, and when they subsequently refused to abide by the new conditions, they were discharged. D.Z. did not accept any changes to the

terms of his Employment Contract. In fact, he specifically and categorically rejected P.K.E.'s proposed changes to the terms and conditions of the Employment Contract. Thus, neither *Jones* nor *Poort* supports P.K.E.[2]

Moreover, as noted by the ALJ and confirmed by the Review Board, P.K.E. failed to provide any other evidence of the duties that it claimed D.Z. owed as an employee. P.K.E. failed to prove that D.Z. had ever received a copy of an employee handbook or that D.Z. was in violation of any of P.K.E.'s written policies, standards, or regulations. Therefore, the Review Board correctly concluded that P.K.E.'s stated reason for discharging D.Z. was a violation of his Employment Contract and that P.K.E. failed to prove that D.Z. did in fact violate the Employment Contract. Simply said, in the facts and circumstances before us, the duties that D.Z. reasonably owed to P.K.E. in his work were defined by the Employment Contract, and P.K.E. failed to prove that D.Z. violated any of these contractual duties.

Finally, P.K.E. claims that it did present evidence that D.Z. engaged in other behavior which would constitute just cause. In so arguing, P.K.E. asks us to review evidence that is not favorable to the Review Board's decision, and make what would amount to factual findings that D.Z. could have been discharged for other grounds that would meet the statutory definitions of just cause. Even if we were inclined to do so, our standard of review precludes this option. *See McHugh,* 842 N.E.2d at 440; *Coleman,* 905 N.E.2d at 1019.

---

**2.** This case is actually more akin to what would have happened in *Jones* had the employee not accepted the new hours. That is to say, if Jones had rejected her employer's unilateral changes to the contractual working conditions and then either quit or was discharged, she would have been entitled to unemployment benefits. *See Jones,* 399 N.E.2d at 845.

Considering only the evidence favorable to the Review Board's decision, and limiting our inquiry into P.K.E.'s stated reason for discharge, we cannot say that the Review Board clearly erred in concluding that D.Z. was not discharged for just cause.

Affirmed.

FRIEDLANDER, J., and MAY, J., concur.