## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 30 2017, 9:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Peter M. Yarbro
Fred R Hains
Hains Law Firm, LLP
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Aaron T. Craft
Elizabeth M. Littlejohn
Deputy Attorneys General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Engel Manufacturing Company, Inc.,

*Appellant-Respondent,*

v.

Review Board of the Indiana Department of Workforce Development and D.R.,

*Appellee-Claimant.*

January 30, 2017

Court of Appeals Case No. 93A02-1607-EX-1596

Appeal from the Review Board of the Indiana Department of Workforce Development

Case No. 16-R-0724

**Mathias, Judge.**

[1] Engel Manufacturing Company, Inc. ("Engel") appeals the order of the Review Board of the Indiana Department of Workforce Development ("the Review Board") determining that one of Engel's employees, D.R., voluntarily left his employment for good cause in connection with the work and was therefore eligible for unemployment benefits. Engel presents one issue on appeal, which we restate as whether the Review Board's decision was supported by sufficient evidence.

[2] We affirm.

## Facts and Procedural History

[3] The facts as found by the administrative law judge ("ALJ"), and adopted by the Review Board, show that D.R. began to working as a lathe operator for Engel in January of 2008. Engel made parts for the aerospace industry, and D.R.'s duties included preparing parts to ship to Engel's aerospace customers.

[4] D.R.'s work environment at Engel was stressful, not only because of the demands of the high-precision parts that Engel produced, but also because of the demeanor of Engel's owner and operator, Stephen Engel ("Mr. Engel"), who, by his own account, frequently used profanity in his conversations.

[5] On one particular occasion, which occurred in November of 2014, D.R. was working on his machine when Mr. Engel approached him and began to yell at him for being "narcissistic" and told him that he was "a real, big fat part of the world, and the rest of the world is very skinny." Tr. p. 14. This shocked D.R., who decided not to return to work the following day. Engel had a strict policy

that any employee who did not show up for work by 9:00 a.m. without calling in was considered to have quit. When Mr. Engel learned that D.R. had not come to work, he called D.R. to apologize and convinced him to return to work.

[6] For the next couple of weeks, D.R.'s work environment improved as Mr. Engel restrained from berating him. However, from this point in November 2014 to February 2016, D.R. witnessed Mr. Engel verbally abuse and curse at other Engel employees. On February 1, 2016, D.R. informed Mr. Engel that he could not work in the same building as Mr. Engel. Mr. Engel took this as D.R.'s resignation and accepted it. Soon thereafter, however, Mr. Engel told D.R. that he needed him as an employee because no other employee could complete the job that D.R. was then working on. D.R. decided to stay on with Engel, but only for three days per week.

[7] Just a few days later, on February 4, 2016, Mr. Engel became angry with D.R. because D.R. had not completed a job that he wanted shipped by the end of the day. Mr. Engel was very angry and "wildly yell[ed]" at D.R. in front of the other employees. Tr. p. 10. D.R. did not respond verbally, but did work late that day in order to finish the job as Mr. Engel had requested.

[8] Four days later, Mr. Engel approached D.R. at work and asked him to review a blueprint and quickly demanded an answer to a question he had about the blueprint. D.R. was unfamiliar with the blueprint and told Mr. Engel that he did not know how to immediately answer his question. D.R. took the blueprint

to the inspection department, a move which he believed prudent, as an incorrect answer to Mr. Engel's question could have cost the company thousands of dollars. D.R. asked three other employees if they knew the answer to the question Mr. Engel had asked. None of them did. Mr. Engel then entered the room, snatched the blueprint out of D.R.'s hands, and stated that he would have another employee look at the blueprint. Shortly thereafter, Mr. Engel returned to D.R. to ridicule him for not being able to answer his question about the blueprint, telling him that "this is easy," and asking him, "you can't do this?" and "what's the matter with you?" Tr. p. 13. D.R. explained that such encounters with Mr. Engel were "not isolated incidents." *Id.*

[9] Humiliated, D.R. did not return to work the following day, which, as noted above, Engel took as quitting the job. This time, however, Mr. Engel did not call D.R. to ask him to return to work. D.R. then applied for unemployment benefits.

[10] A claims deputy for the Department of Workforce Development determined that D.R. had voluntarily left his employment for good cause and was therefore entitled to receive unemployment benefits. Engel appealed this determination, and an ALJ conducted a telephonic hearing on the matter on April 19, 2016. On April 26, 2016, the ALJ issued her decision affirming the claims deputy's determination that D.R. had voluntarily left his employment for good cause. Engel appealed this decision to the Review Board, and on June 9, 2016, the Review Board affirmed the ALJ's decision and adopted the ALJ's findings of fact and conclusions of law. Engel now appeals.

## The Indiana Unemployment Compensation Act

[11]   Indiana Code article 22-4, known as the Indiana Unemployment Compensation Act ("the Act"), was enacted to "provide for payment of benefits to persons unemployed through no fault of their own." *P.K.E. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 942 N.E.2d 125, 130 (Ind. Ct. App. 2011), *trans. denied.* Pursuant to the Act, an individual who meets the eligibility requirements of Indiana Code chapter 22-4-14 and is not disqualified by the exceptions in chapter 22-4-15 is eligible for benefits. *Id.* "An otherwise eligible individual can be disqualified from receiving benefits if he voluntarily left his employment without good cause[.]" *Ind. State Univ. v. LaFief*, 888 N.E.2d 184, 186 (Ind. 2008) (citing Ind. Code § 22-4-15-1). A claimant's entitlement to unemployment benefits is determined based upon the information that is available without regard to a burden of proof. *P&P Home Servs., LLC v. Review Bd. of Ind. Dep't of Workforce Dev.*, 53 N.E.3d 1232, 1234 (Ind. Ct. App. 2016) (citing Ind. Code § 22-4-1-2(c)).

## Standard of Review

[12]   The Review Board reviews the ALJ's decision for errors of fact, law, or procedure based on the record before the ALJ. *P.K.E. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 942 N.E.2d 125, 129-30 (Ind. Ct. App. 2011), *trans. denied* (citing Ind. Code § 22-4-17-5(e)). The Review Board "may on [its] own motion affirm, modify, set aside, remand, or reverse the findings, conclusions, or orders of an administrative law judge[.]" I.C. § 22-4-17-5(e). As the ultimate finder of fact, the Review Board has wide discretion and freedom to decide any and all

issues and may act independently on the evidence before it. *P.K.E.*, 942 N.E.2d 129.

[13] Here, the Review Board affirmed the ALJ's findings and conclusions in whole. Decisions made by the Review Board are subject to review for legal error, but questions of fact determined by the Review Board are, absent limited exceptions, conclusive and binding. *K.S. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 33 N.E.3d 1195, 1197 (Ind. Ct. App. 2015) (citing Ind. Code § 22-4-17-12(a)).

[14] As explained by our supreme court in *Chrysler Group., LLC v. Review Board of the Indiana Department of Workforce Development*:

> Under Indiana's Unemployment Compensation Act, "[a]ny decision of the review Board shall be conclusive and binding as to all questions of fact." Ind. Code § 22-4-17-12(a) (2007). The Review Board's conclusions of law may be challenged as to "the sufficiency of the facts found to sustain the decision and the sufficiency of the evidence to sustain the findings of facts." Ind. Code § 22-4-17-12(f). Consistent with appellate review of other administrative adjudications, we categorize the Review Board's findings three ways: (1) basic, underlying facts; (2) "ultimate facts" derived as inferences or conclusions from basic, underlying facts; (3) and conclusions of law.
>
> We review the Review Board's findings of basic facts under a substantial evidence standard, and we neither reweigh the evidence nor assess its credibility. We consider only the evidence most favorable to the Review Board's findings and, absent limited exceptions, treat those findings as conclusive and binding. Ultimate facts—typically mixed questions of fact and law—are reviewed to ensure the Review Board has drawn a reasonable

inference in light of its findings on the basic, underlying facts. Where the matter lies within the particular expertise of the administrative agency, we afford the finding a greater level of deference. Where the matter does not lie within the particular expertise of the agency, however, the reviewing court is more likely to exercise its own judgment. Regardless, the court examines the logic of the inference drawn and imposes any rules of law that may drive the result. The Review Board's conclusion must be reversed if the underlying facts are not supported by substantial evidence or the logic of the inference is faulty, even where the agency acts within its expertise, or if the agency proceeds under an incorrect view of the law.

We are not bound by the Review Board's conclusions of law, though [a]n interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself.

960 N.E.2d 118, 122-23 (Ind. 2012) (some citations and internal quotations omitted).

## Discussion and Decision

[15] In the present case, Engel makes no claim that D.R. has not satisfied the eligibility requirements of chapter 22-4-14, nor does D.R. deny that he voluntarily left his employment. Thus, the only question before us is whether D.R. "voluntarily left the employment without good cause in connection with the work[.]" I.C. § 22-4-15-1(a). "Whether an employee leaves his employment without good cause in connection with the work is a question of fact to be determined by the Review Board." *Y.G. v. Review Bd. of Ind. Dep't of Workforce*

*Dev.*, 936 N.E.2d 312, 314 (Ind. Ct. App. 2010) (citing *Indianapolis Osteopathic Hosp. Inc. v. Jones*, 669 N.E.2d 431, 433 (Ind. Ct. App.1996)).

[16] Voluntary unemployment is not generally compensable under the Act because a declared purpose of the Act is to provide benefits for persons unemployed through no fault of their own. *Kentucky Truck Sales, Inc. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 725 N.E.2d 523, 526 (Ind. Ct. App. 2000). Thus the requirement that an employee who voluntarily leaves employment must do so for "good cause in connection with the work" if he wishes to receive unemployment benefits.

[17] This "good cause" requirement means that the employee's reason for terminating his employment must be job related and objective in character, and not consist of purely subjective, personal reasons. *Id.* "The Act will provide compensation only when demands placed upon an employee are so unreasonable or unfair that 'a reasonably prudent person would be impelled to leave.'" *Id.* (quoting *Marozsan v. Review Bd. of Ind. Employment Sec. Div.*, 429 N.E.2d 986, 990 (Ind. Ct. App. 1982)). Thus, in order to determine if good cause existed, the Review Board must determine first whether the individual's reasons for abandoning employment would have compelled a reasonably prudent person under the same circumstances to quit, and then whether the individual's reasons for leaving were objectively related to the employment. *Brown v. Ind. Dep't of Workforce Dev.*, 919 N.E.2d 1147, 1151 (Ind. Ct. App. 2009).

[18] Where an employee asserts that a reprimand or criticism represents good cause for leaving employment, we consider all of the circumstances surrounding the reprimand. *Kentucky Truck Sales,* 725 N.E.2d at 526. "If there are other factors involved, such as provocation brought on by unjust reprimands or other evidentiary factors that would have 'strong influential effect upon the mind of the employee contributing to or causing him to voluntarily quit his employment,'" such contributing factors can, under the proper circumstances, be considered as good cause. *Id.* (quoting *Marozsan,* 429 N.E.2d at 990).

[19] Here, Engel claims that the Review Board unreasonably concluded that D.R. quit for good cause. Given the highly deferential standard of review we apply to such matters, we cannot agree. The Review Board adopted the ALJ's findings, which well document Mr. Engel's frequent outbursts toward D.R., which involved him yelling and cursing[1] at D.R. for little reason. Without repeating all of the facts as set forth above, we note that Mr. Engel called D.R. a narcissist, and stated that he lived in a "real, big fat part of the world, and the rest of the world is very skinny." Tr. p. 14. He later "wildly" yelled at D.R. in front of other employees. He also ridiculed D.R. in front of other employees when D.R. was unable to read a blueprint, a task that several other employees were also unable to do. Also, as D.R. explained, such encounters with Mr. Engel were

---

[1] Engel takes issue with the Review Board noting Mr. Engel's use of profanity. Engel notes that D.R. testified that he did not remember Mr. Engel cursing at him. However, Mr. Engel himself admitted at the ALJ hearing that he frequently used profanity. From this, the ALJ and the Review Board could reasonably conclude that D.R.'s outbursts included profanity.

not isolated incidents, and D.R. observed Mr. Engel berate other employees. Notably, Mr. Engel did not directly contradict any of D.R.'s testimony before the ALJ, other than to claim that he had not yelled. Given these facts and circumstances, we are in no position on appeal to second-guess the Review Board's factual determination that D.R.'s reason for quitting — Mr. Engel's continued verbal abuse — would have compelled a reasonably prudent person to quit under the same circumstances.

[20] Engel's citation to *Richey v. Review Board*, 480 N.E.2d 968, 970 (Ind. Ct. App. 1985), is unavailing. In *Richey*, the Review Board made a factual finding that the employee quit for subjective, personal reasons and therefore did not quit for good cause. *Id*. at 971. On appeal, this court merely held that sufficient evidence supported the Board's finding. *Id*. 971-72. Contrariwise, here the Review Board found that D.R. did have good cause to quit, and, as noted above, there was sufficient evidence to support this finding.

[21] Furthermore, *Richey* is factually distinguishable from the present case. In *Richey*, merely one incident had occurred months before the employee quit in which the employee and her supervisor had "an exchange of words." *Id*. at 971. Thereafter, the employee quietly "harbor[ed] sensitivity" over this incident and subjectively felt "uncomfortable." *Id*. at 971-72. Accordingly, the *Richey* court held that, "Feeling uncomfortable in an employment situation is a specific enough finding to equate Richey's reasons for leaving as personal and subjective in nature; i.e., her reason was not for 'good cause.'" *Id*.

[22] In contrast, here, D.R. was subjected to repeated verbal abuse by Mr. Engel, and he did not sit idly and harbor his feelings for months. Instead, he directly confronted Mr. Engel and even went so far as to quit, only to be asked to return to work by Mr. Engel himself. When Mr. Engel's coarse behavior continued, D.R. quit.

[23] Engel also cites *Kentucky Truck Sales, Inc. v. Review Board*, 725 N.E.2d 523 (Ind. Ct. App. 2000), but we find this case too to be readily distinguishable. In *Kentucky Truck Sales*, Kiser, the employee, had a history of missing work and was warned that further attendance problems would subject him to discipline. Despite this warning, Kiser missed work on one day and reported an hour late the next day. When Kiser arrived at work an hour late, the foreman had been instructed not to assign him any work, and the shop manager yelled at him, accused him of lying, and referred to him as a "son of a bitch." *Id.* at 525. Kiser told the foreman that he "didn't have to listen to this s---," and clocked out, falsely indicating on his time card that he had gone home sick. *Id.* (alterations in original). Kiser then did not return to work that week or the next and did not contact the employer. Kentucky Truck Sales then sent Kiser a letter notifying him that it had assumed that Kiser had voluntarily quit and to contact the employer if this were not the case. Kiser made no further contact with his employer other than to return his uniforms several weeks later. Kiser then applied for, and was denied, unemployment benefits. The ALJ reversed this initial decision and determined that Kiser had quit for good cause, and the Review Board affirmed.

[24] On appeal, this court noted that Kiser had not filed an appellee's brief and noted that the employer therefore needed only establish *prima facie* error in the Review Board's decision. *Id*. at 525-26. Applying this lesser standard, we held that although Kiser's reprimand may have been "indelicately presented," in light of Kiser's attendance record, it was not an unjustified reprimand that constituted "such provocation as to impel a reasonably prudent person to leave his employment." *Id*. at 526.

[25] Here, there is no suggestion that D.R. had a history of poor attendance. Indeed, when he did not show up to work after the November 2014 incident, it was Mr. Engel who called D.R. and requested that he return to work. Moreover, he was subjected to repeated verbal berating and humiliation by Mr. Engel in front of other employees. Accordingly, the holding of *Kentucky Truck Sales* does not convince us that we must reverse the factual determination of the Review Board that D.R. quit for good cause in connection with his work.

[26] The same is true for Engel's citation to *Geckler v. Review Board*, 244 Ind. 473, 193 N.E.2d 357 (1963), a case in which the employee quit because of *one instance* of being indelicately reprimanded. Again, here, D.R. was subject to repeated verbal harassment and humiliation. Unlike in *Geckler*, the Review Board did not find that D.R. was "nervous, temperamental, hypersensitive and subjective." 244 Ind. at 477, 193 N.E.2d at 358.

[27] Finally, Engel argues that D.R. had no medical evidence to support his claims of stress-related physical ailments, citing *Y.G. v. Review Board*, 936 N.E.2d 312

(Ind. Ct. App. 2010). At issue in *Y.G.* was whether the Review Board had erred in determining that the employee did not qualify for benefits under Indiana Code section 22-4-15-1(c)(2), which provides that an employee who voluntarily quits is not disqualified for benefits if the unemployment is "the result of medically substantiated physical disability" and the employee "is involuntarily unemployed after having made reasonable efforts to maintain the employment relationship . . . ." Here, however, the Review Board did not conclude that D.R. was entitled to benefits based a medically-substantiated physical disability. It instead concluded that he was entitled to benefits under subsection 22-4-15-1(a) because he voluntarily left the employment with "good cause in connection with the work[.]"

## Conclusion

[28] The Review Board's factual determination that D.R. voluntarily left his employment with good cause in connection with the work is supported by sufficient evidence in the record. Accordingly, we affirm the Review Board's conclusion that D.R. is entitled to unemployment benefits.

[29] Affirmed.

Baker, J., and Pyle, J., concur.