## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 26 2017, 6:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT *PRO SE*

Timothy C. Platt
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Kyle Hunter
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Timothy C. Platt, | May 26, 2017 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 93A02-1609-EX-2213 |
| v. | Appeal from the Review Board of the Department of Workforce Development |
| Review Board of the Indiana Department of Workforce Development, | The Honorable Steven F. Bier, Chairperson, George H. Baker, Member, and Larry A. Dailey, Member |
| *Appellee-Respondent* | Cause No. 16-R-1152 |

**May, Judge.**

[1] Timothy C. Platt appeals a decision by the Review Board of the Indiana Department of Workforce Development ("Review Board") that denied him unemployment benefits. He presents multiple issues for our review, which we consolidate and restate as:

1. Whether the Review Board erred when it determined Zenith Freight Lines ("Zenith Freight") and Strategic Outsourcing, Inc. ("SOI") were Platt's co-employers when he was discharged, and

2. Whether the Review Board erred when it determined Platt was discharged from his employment for cause and was thus ineligible for unemployment benefits.

We affirm.

## Facts and Procedural History

[2] On July 21, 2015, Platt's employment was terminated and shortly thereafter Platt filed for unemployment benefits. On September 8, 2015, a claims deputy for the Indiana Department of Workforce Development ("DWD") determined Platt was not discharged from his employment for just cause and he was therefore entitled to unemployment benefits. On September 17, 2015, Platt's employer appealed the claim deputy's decision to grant Platt unemployment benefits.

[3] A DWD Administrative Law Judge ("ALJ") held a hearing on the matter on October 21, 2015 ("First Hearing"). Representatives from Zenith Global

Logistics ("Zenith Global")[1] and Platt submitted evidence regarding Platt's termination. On October 22, 2015, the ALJ reversed the claim deputy's decision and denied Platt unemployment benefits. The ALJ found and concluded:

The employer discharged the claimant for failing to comply with company procedures, violating DOT [Department of Transportation] regulation, and failing to follow instructions.

On May 8, 2015, the claimant went to the physician for the purpose of updating his medical examination report. The claimant has fifteen (15) days to update the medical examination report with DMV [Department of Motor Vehicles]. The claimant relied upon the physician's office to send the medical examination report to the DMV. The Administrative Law Judge did not receive evidence that the medical examination report was sent to the DMV.

On June 19, 2015, the employer conducted an audit of its drivers. The employer learned that the claimant's CDL [Commercial Driver's License] Class A license was suspended because he did not register his most recent medical examination report. On the same day, the claimant drove to Valparaiso, Indiana. An Indiana State police officer pulled over the claimant to conduct a check of the vehicle. The officer issued a ticket to the claimant because he learned that the claimant's CDL Class A license was suspended. The employer provided a copy of the ticket that was made part of the record. The claimant was cited for driving a commercial vehicle without a valid license.

---

[1] It would seem Zenith Global is a parent company of Zenith Freight, but the record is inconclusive.

[7] The claimant notified the Director of Compliance of the ticket. The Director of Compliance asked the claimant if he took his new medical examination report to the DMV, and the claimant said that he had not. The Director told the claimant not to drive the truck and to contact his dispatcher to assist in handling the situation.

[8] The claimant was concerned how he would get back to Indianapolis, Indiana.

[9] The claimant explained to the ALJ that he went inside a rest stop and met a truck driver who was abandoned by his coworker. This driver said that he could drive the claimant's truck to Indianapolis, Indiana. The alleged truck driver drove the claimant in the claimant's truck to Indianapolis, Indiana. The claimant did not provide a name or description of the individual to the ALJ. The claimant's explanation of how he returned to Indianapolis, Indiana is not credible.

[10] On June 22, 2015 the Director of Compliance learned that the claimant's truck was in the yard. The employer wondered how the claimant's truck returned to the yard when he was instructed not to drive it. The Director of Compliance completed a standard monthly driver log audit. When the Director saw that the claimant's truck showed unassigned driving time, she contacted dispatch because she saw that the distance was approximately the same distance from where the claimant called on June 19, 2015. No one could verify who drive the vehicle back to the facility. When the Director of Compliance confronted the claimant, he said that he allowed someone to drive the vehicle back because he could not. The Director of Compliance notified the Vice-President of Fleet Operations.

[11] The employer concluded that the claimant failed to comply with company procedures by not properly logging all miles, violated a

DOT regulation by not having a valid CDL Class A license when operating the employer's vehicle, and failed to follow the instructions of not driving the vehicle. The claimant was discharged effective July 21, 2015.

CONCLUSIONS OF LAW

* * * * *

[12]     A duty exists upon an employee to perform his job to the best of his ability. The claimant knew that he was to have a valid CDL Class A license and that he was to register the most recent medical examination report with the DMV. The claimant admitted to the Director of Compliance that he did not have the most current medical examination report registered with the DMV thus his CDL Class A license was suspended. This was the claimant's responsibility, not the doctor. At the time the claimant was notified of the suspension, he had been driving the employer's truck. The claimant jeopardized the employer's liability. The claimant did not have a valid CDL Class A license when he drove the employer's truck. The claimant violated the DOT regulation.

[13]     The employer instructed the claimant not to drive the vehicle. The Director of Compliance had the authority to issue the directive, and the directive was reasonable. The claimant alleged that he allowed a non-employee to drive the employer's truck to Indianapolis, Indiana. The claimant's explanation of how he returned to Indianapolis, Indiana was not credible. The claimant drove the truck back to Indianapolis, Indiana. The claimant refused to follow an instruction. Again, the claimant jeopardized the employer's liability.

[14]     The claimant knew that all mileage must be logged. The claimant did not log his mileage from Valparaiso, Indiana to

Indianapolis, Indiana, which was a violation of procedure. By failing to log the mileage, the employer would be unaware where its truck was. Furthermore, the employer would be unable to demonstrate that the operation of the vehicle was within federal guidelines.

The claimant breached the duty. The claimant was discharged for just cause. The claimant is ineligible for benefits under the Act.

(Exhibit Vol. IV at 29-31) (internal citations to the record omitted).

On November 5, 2015, Platt appealed the ALJ's decision to the Review Board. The Review Board affirmed the ALJ's decision, with a slight addendum supporting the conclusion Zenith Freight discharged Platt for cause, on December 9, 2015. On December 14, 2015, Platt filed an appeal with this court. The Review Board requested remand of the matter to determine the identity of Platt's last separating employer. We granted that request, and on May 5, 2016, we dismissed Platt's appeal without prejudice and remanded for the determination of the identity of Platt's last separating employer. We noted in our order Platt was permitted to raise the issues he would have raised in the original appeal, as well as any new issues created by the proceedings on remand.

On June 29, 2016, a different ALJ held a hearing regarding the identity of Platt's last separating employer ("Second Hearing"). A representative of PEO-

SOI-31 of AR, Inc.,[2] one of the possible employers, sent a letter to the ALJ indicating none of the possible employers would be participating in the Second Hearing. Platt participated in the hearing and offered his W-2 and paystub as evidence. On July 8, 2016, the ALJ issued an order concluding the last separating employers were co-employers SOI and Zenith Freight. The ALJ also reissued the order from the First Hearing in its entirety. Platt appealed the order from the Second Hearing. On September 2, 2016, the Review Board denied his request, affirming the order from the Second Hearing.

# Discussion and Decision

[18] We first note Platt proceeds in this appeal *pro se*. Litigants who proceed *pro se* are held to the same established rules of procedure that trained counsel is bound to follow. *Smith v. Donahue*, 907 N.E.2d 553, 555 (Ind. Ct. App. 2009), *trans. denied*, *cert. dismissed*, 558 U.S. 1074 (2009). One risk a litigant takes when proceeding *pro se* is that he will not know how to accomplish all the things an attorney would know how to accomplish. *Id*. When a party elects to represent himself, there is no reason for us to indulge in any benevolent presumption on his behalf or to waive any rule for the orderly and proper conduct of his appeal. *Foley v. Mannor*, 844 N.E.2d 494, 502 (Ind. Ct. App. 2006).

---

[2] As indicated as part of the findings from the Second Hearing, PEO-SOI of AR, Inc. is listed as Platt's employer in the unemployment papers. It would seem PEO-SOI of AR Inc. is a parent company of SOI, but the record is inconclusive.

On appeal from a decision of the Review Board, we "utilize a two-part inquiry into the sufficiency of the facts sustaining the decision and the sufficiency of the evidence sustaining the facts." *Whiteside v. Ind. Dep't of Workforce Development*, 873 N.E.2d 673, 674 (Ind. Ct. App. 2007).

> In doing so, we consider determinations of basic underlying facts, conclusions or inferences from those facts, and conclusions of law. The Review Board's findings of fact are subject to a substantial evidence standard of review. "Any decision of the review board shall be conclusive and binding as to all questions of fact." I.C. § 22-4-17-12(a). We do not reweigh the evidence or assess the credibility of witnesses. Regarding the Board's conclusions of law, we assess whether the Board correctly interpreted and applied the law.

*Id*. at 675 (some citations omitted). We will reverse "only if there is no substantial evidence to support the findings." *KBI, Inc. v. Review Bd. of the Ind. Dep't of Workforce Dev.*, 656 N.E.2d 842, 846 (Ind. Ct. App. 1995).

### I. Determination of Zenith Freight and SOI as Co-Employers

As noted in the facts, the Review Board requested, and we granted, remand to allow an ALJ to determine Platt's last separating employer. Regarding this issue, the ALJ found and concluded:

The employer listed on this appeal is: PEO-SOI-31 of AR, Inc., 9000 Town Center Pkwy, Lakewood Ranch, FL, 34202.

The Claimant was hired by Strategic Outsourcing, Inc. (SOI), who then leased his services to Zenith Freight Lines. The Claimant only worked for Zenith Freight Lines. According to

the deputy's initial determination of eligibility, the Claimant's separation occurred in July, 2015. The deputy found that the Claimant was eligible for benefits, and Zenith appealed through its agent, Equifax. During the October 21, 2015, hearing, only the Claimant and Zenith employees testified.

The Claimant asserts that Zenith had no standing to appeal the determination, as it was not his employer. The Claimant asserts that Strategic Outsourcing, Inc. (SOI) is his true employer, and that Zenith hired SOI to hire employees for Zenith's use and to complete Zenith's accounting duties.

The Claimant presented his 2015 W-2 form as evidence, which lists the Employer's name as AMLEASE CORP (A SUBSIDIARY OF SOI), with the same address listed as the Employer on the determination, 9000 Town Center Pkwy, Lakewood Ranch, FL, 34202. Also listed on the W-2 is Zenith Freight Lines, with no designation as to why that company is listed.

The Claimant also presented a copy of his check and pay stub for July 17, 2015. On the check, Zenith Freight Lines is listed, on top of Strategic Outsourcing, Inc. Both companies are also listed on the stub, with addresses for each.

Strategic Outsourcing, Inc., is a Professional Employer Organization (PEO), as noted in its title as Employer for this appeal.

CONCLUSIONS OF LAW:

The only issue to be decided is whether the Employer listed on the case is the Claimant's last separating employer. The

Claimant agrees that he worked only for Zenith Freight Lines, but as a leased employee from SOI.

As there is little to no citable Indiana caselaw on this topic, the Administrative Law Judge must look to statutory language to determine the employment relationship, if any, between the Claimant and Zenith Freight Lines.

The Employer is listed as "PEO-SOI". Indiana Code 22-4-6.5 deals with Professional Employer Organizations, as they deal with Unemployment Insurance benefits. According to Indiana Code 22-4-6.5-5, a "Professional employer organization" or "PEO" has the meaning set forth in IC 27-16-2-13, which defines a PEO as:

> (a) "Professional employer organization" or "PEO" means a person engaged in the business of providing professional employer services.

> (b) The term does not include the following:

> > (1) An arrangement through which a person:

> > > (A) whose principal business activity is an activity other than entering into professional employer agreements; and

> > > (B) that does not hold the person out as a professional employer organization;

> > shares employees with a commonly owned company within the meaning of Section 414(b)1 and 414(c)2 of the Internal Revenue Code of 1986, as amended.

(2) An independent contractor arrangement through which a person:

(A) assumes responsibility for a product produced or a service performed by the person or the person's agent; and

(B) retains and exercises primary direction and control over the work performed by an individual whose services are supplied under the independent contractor arrangement.

(3) The provision of temporary help services.

As no contradictory evidence was present, the Administrative Law Judge concludes that SOI is a PEO as applied to IC 22-4-6.5.

The Claimant's testimony leads the Administrative Law Judge to conclude that Zenith is at least a client of SOI, in that the claimant was "leased" to Zenith. Indiana Code 22-4-6.5 defines "Client":

Sec. 1. As used in this chapter, "client" has the meaning set forth in IC 27-16-2-3.

IC 27-16-2 defines "Client":

Sec. 3. "Client" means a person that enters into a professional employer agreement with a professional employer organization.

According to Claimant's testimony, Zenith hired SOI to hire employees and complete accounting duties for Zenith. The Administrative Law Judge concludes that Zenith is a client through an agreement between the two parties.

As there exists a relationship between Zenith and SOI, the question remains whether Zenith was the last separating employer for the Claimant. Indiana Code addresses a possible employment relationship between Zenith, SOI and the Claimant.

> "Co-employer" refers to a client or a professional employer organization that has entered into a professional employer agreement and has a relationship with a co-employed individual.

IC 27-16-2-5[.]

Also:

> "Co-employment relationship" means a relationship:
>
> (1) between a:
>
>> (A) client and a professional employer organization; or
>>
>> (B) co-employer and a covered employee; and
>
> (2) that results from the client and the professional employer organization entering into a professional employer agreement.

IC 27-16-2-6[.]

[36]    In furtherance:

>   "Co-employed" means that an individual is
>   contemporaneously employed by both a client and a
>   professional employer organization.
>
>   IC 27-16-2-4[.]

[37]    The Administrative Law Judge concludes that, according to
Indiana Code, Zenith and SOI were involved in a
"co-employment relationship", due to the evidence submitted by
the Claimant. The W-2, paycheck and pay stub, all reflect SOI
and Zenith being in collaboration in the employment of the
Claimant. Further, because of the relationship, the Claimant is
to be considered "co-employed".

[38]    The Administrative Law Judge concludes that Zenith and SOI
were simultaneously the last separating Employers for the
Claimant in this appeal.

(Exhibit Vol. IV at 52-54) (citations to the record omitted).

[39]    Platt challenges these findings and conclusions, arguing, "the ALJ is wrong

because the ALJ's generalized Zenith and generalized SOI do not accurately

reflect the legal realities of the distinctly separate corporate structures." (Br. of

Appellant at 11) (errors in original). Platt contends the matter involved six

separate corporate entities, which he referred to as "Corporate Shells," named:

"Zenith Global Logistics," "Zenith Freight Lines," "Strategic Outsourcing

Inc.," "PEO-SOI-31 of AR, Inc.," "AMLEASE Corp.," and "Summit Services,

Inc." (*Id.* at 9.) As best as we can ascertain, Platt requests we reweigh the

evidence, which we cannot do.  *See Whiteside*, 873 N.E.2d at 675 (appellate court cannot reweigh evidence or judge the credibility of witnesses).

[40] The evidence was sufficient to support the findings.  The ALJ noted the employer listed on the appeal of Platt's request for unemployment benefits was "PEO-SOI-31 of AR, Inc., 9000 Town Center Pkwy, Lakewood Ranch, FL, 34202."  (Exhibit Vol. IV at 52.)  Platt provided copies of his W-2 and a paystub.  The W-2 listed "AMLEASE CORP (A SUBSIDIARY OF SOI)" and Zenith Freight as the issuing employers.  (*Id*. at 49.)  The address on the W-2 was the same as that listed as the employer's address in the appeal filed.  Platt's paystub was issued from Zenith Freight, with SOI listed under Zenith Freight's name.  The employer representatives at the first ALJ hearing, the records of which were incorporated into the findings on remand, testified they were from Zenith Global, and Platt agreed during the Second Hearing those representatives "were all employees of the Zenith Freight Lines[.]"  (Tr. Vol. III at 6.)

[41] Insomuch as his argument challenges the ALJ's legal conclusions, Platt has not presented a cogent argument.  He does not offer for our consideration precedent in support of his argument the Review Board erred when it accepted the ALJ's findings, nor does he clearly indicate how the ALJ erred.  For those reasons, his argument is waived.  *See Carter v. Indianapolis Power & Light Co.*, 837 N.E.2d 509, 514 (Ind. Ct. App. 2005) ("A party generally waives any issue for which it fails to develop a cogent argument or support with adequate citation and portions of the record."), *reh'g denied, trans. denied*.

## II. Denial of Benefits

[42] The Indiana Unemployment Compensation Act, found in Indiana Code Article 22-4, was enacted to "provide for payment of benefits to persons unemployed through no fault of their own." *P.K.E. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 942 N.E.2d 125, 130 (Ind. Ct. App. 2011), *trans. denied*. Pursuant to the Act, an individual who meets the eligibility requirements of Indiana Code chapter 22-4-14 and is not disqualified by the exceptions in chapter 22-4-15 is eligible for benefits. *Id.* "An applicant's entitlement to unemployment benefits is determined based on the information that is available without regard to a burden of proof." Ind. Code § 22-4-1-2(c).

[43] Platt argues, "[w]ith the previous ALJ's decision vacated, and the 'Employer' choosing not to participate, there was nothing to oppose Mr. Platt's receipt of Unemployment Insurance benefits. The current ALJ allowed information that was not properly entered as evidence to be considered." (Br. of Appellant at 7.) However, Platt's arguments suggest he has forgotten the conversations he had with the ALJ during the Second Hearing.

[44] In particular, at the beginning of the Second Hearing, the ALJ stated:

> And this hearing will be about whether the employer listed - let me read it verbatim here - whether the employer is the last and separating employer. That's the only issue we're going to deal with today. . . . And we're not going to talk about why you got separated from your . . . employer.

(Tr. Vol. III at 2.) Platt indicated he understood the issue for consideration at the Second Hearing was confined to the last separating employer identification. Additionally, regarding the admission of certain evidence, Platt answered in the affirmative when asked if that evidence could be admitted. The unchallenged evidence included:

> [T]he determination of eligibility being appealed, the employer's signed written request for the appeal, the notice of hearing you received in the mail, the general instruction sheet that came along with the notice, the acknowledgment sheet which you did return with your telephone number, the docket sheet that will contain notes about the process of the case, an exhibit list which will indicate any documents entered into the record, and in addition of [sic] the eighth exhibit will be the remand issued by the Review Board on May 27th.

(*Id*. at 3-4.)

[45] Thus, the employers' absence at the second hearing is of no consequence to the issue of Platt's reason for separation because that was not the issue before the ALJ during the Second Hearing. As he did not object to the admission of the evidence he now challenges during the hearing, his arguments regarding that evidence are waived. [3] *See Family Development, Ltd. v. Steuben County Waste Watchers, Inc.*, 749 N.E.2d 1243, 1256 (Ind. Ct. App. 2001) (when appellant

---

[3] Platt also argues the ALJ committed a number of errors amounting to violations of his due process rights. However, he does not indicate how his rights were violated by the ALJ's actions, nor does he cite case law to support his arguments. Thus, his contentions on that issue are waived. *See Carter*, 837 N.E.2d at 514 ("A party generally waives any issue for which it fails to develop a cogent argument or support with adequate citation and portions of the record.").

does not present an issue during the administrative proceedings, the issue is waived from appellate consideration), *reh'g denied*.

[46] Waiver notwithstanding, we hold the Review Board did not err when it affirmed and adopted the ALJ's findings and conclusions from the First Hearing and Second Hearing regarding Platt's reason for separation. Platt's employer provided evidence he took a medical exam on May 8, 2015, but did not update the records for his CDL license with the DMV, resulting in the suspension of his CDL license. His employer discovered the suspension on June 19, during an audit. The same day, Platt was pulled over and cited for driving a commercial vehicle without a CDL. On June 19, Platt's employer instructed him to refrain from driving the truck due to the suspension of his license and the citation. Platt was concerned how he would get home to Indianapolis from Valparaiso.

[47] On June 22, a supervisor saw Platt's truck in the Indianapolis parking area. Knowing Platt was instructed not to drive the truck, the supervisor asked Platt how the truck got to Indianapolis. Platt indicated he found a stranded driver at a truck stop and that driver drove him back to Indianapolis. The ALJ in the First Hearing found Platt was terminated from his employment because he "failed to comply with company procedures by not properly logging all miles, violated a DOT regulation by not having a valid CDL Class A license when operating the employer's vehicle, and failed to follow the instructions of not driving the vehicle." (Exhibit Vol. IV at 30.)

Platt's arguments to the contrary, including his insistence he did not drive the truck to Indianapolis and a Newton County case number he claims dismissed the June 19 citation, are invitations for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See Whiteside*, 873 N.E.2d at 675 (appellate court cannot reweigh evidence or judge the credibility of witnesses).

# Conclusion

The evidence supported the ALJ's findings regarding Platt's last separating employer and thus the Review Board did not err when it affirmed and adopted the ALJ's findings and conclusions indicating Zenith Freight and SOI were Platt's last separating co-employers. Additionally, the Review Board did not err when it affirmed and adopted the ALJ's findings and conclusions regarding the reason for Platt's termination. Accordingly, we affirm the decision of the Review Board.

Affirmed.

Brown, J., and Pyle, J., concur.